Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000011
09-JUL-2015
08:17 AM

NO. CAAP-13-0000011

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JOEL JORDAN, Plaintiff-Appellant, and
CATHY JORDAN, Plaintiff-Appellee,
v. DONALD ADKINS, Defendant-Appellee


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC10-1-11014)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Counterclaim Defendant-Appellant Joel Jordan (**Joel**) appeals from the December 27, 2012 Judgment[1] of the District Court of the First Circuit, Honolulu Division (**District Court**), ordering him to pay $975 plus $30 in filing fees to Defendant-Counterclaim Plaintiff-Appellee Donald Adkins (**Adkins**) and dismissing counterclaims against Plaintiff-Counterclaim Defendant Cathy Jordan (**Cathy**).[2]

---

[1] The notice of appeal states that Joel is appealing from an order entered on November 27, 2012. However, the order entered on November 27, 2012 does not order Joel to pay $975 plus a filing fee. As the December 27, 2012 Judgment does include such an order, we interpret the notice of appeal as appealing from this judgment instead. Ek v. Boggs, 102 Hawai'i 289, 294, 75 P.3d 1180, 1185 (2003) ("[A] mistake in designating the judgment should not result in loss of the appeal as long as the intention to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake.") (citations, internal quotation marks, and ellipsis omitted).
   The Honorable Philip Doi presided over the trial that resulted in the December 27, 2012 Judgment.

[2] Together, Joel and Cathy will be referred to as the Jordans.

On appeal, Joel raises five points of error and alleges that the District Court erred by: (1) denying his oral motion to dismiss Adkins's counterclaim; (2) allowing witness "Ronnie Adkins" to testify; (3) allowing Adkins to behave in a way that violated courtroom decorum; (4) not allowing a police officer called by the Jordans to testify; and (5) entering a judgment of $975 plus fees in favor of Adkins when he had already been paid by Joel.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Joel's points of error as follows:

(1)&(5) Points of error 1 and 5 are both based on the argument that Adkins was not entitled to the award of $975 plus fees because the Jordans already paid him; thus, Joel argues, any claim by Adkins was brought not on behalf of himself, but on behalf of third parties who were not parties to the counterclaim.

As to Joel's first point, we conclude that the District Court did not err in denying the oral motion to dismiss Adkins's counterclaim, which was made after Joel's attorney, Anthony Locricchio (**Locricchio**), questioned Adkins at trial. Adkins testified that although his counterclaim was for about $9000, $8025 of that amount was owed to other persons while only $975 was owed to him personally.[3] He testified that he received four checks from Joel, for $1500, $2000, $1500, and $1000. Joel apparently stopped payment on the fourth check for $1000. Adkins indicated that he used the money from the other three checks to pay the other individuals who worked on the Jordans' condominium. Joel argued that because Adkins did not have a "personal stake" in the entire amount prayed for in the counterclaim, the counterclaim was "misfiled." When asked to address Adkins's claim that he was still personally owed $975, Joel argued, through counsel, that "at this point [Adkins] says

---

[3] Adkins testified that the $975 was owed for his work hanging cabinets in the kitchen and bathroom of the Jordans' condominium.

he was paid that amount of money. So he can't file a counterclaim for it. He admits he took the 975." However, the court did not clearly err when it determined that this statement misstated the evidence. Adkins's testimony was that the three checks he received from Joel which were not cancelled were used to pay others, not to satisfy the $975 that he alleged was owed to him personally. Although Adkins may not have been entitled to recover the entire amount he initially claimed, on the grounds that it was not due to him, his claim that he was owed $975 for his personal services was properly allowed. Thus, the District Court did not err in denying the oral motion to dismiss.

Similarly, Joel's fifth point of error alleges that "[w]hat was owed to Mr. Adkins was $975.00 and this $975.00 was already paid by Plaintiff Joel Jordan from the first $5,000.00 check[s] that he got from Joel Jordan. The checks were written out in his name, he accepted it and cashed it." Again, Adkins's testimony was that the checks totaling $5000 were used to pay other workers. His position was that he was still owed $975 for his installation of the Jordans' cabinets. The District Court was entitled to rely on this testimony and we will not disturb its assessment of the credibility of the witness's testimony. Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact.") (citation and internal quotation marks omitted).

(2) Preliminarily, we note that, although trial apparently took place on six different days, the record on appeal only contains complete transcripts for the first day of trial, November 18, 2011, and the last day of trial, November 27, 2012. It also includes a partial transcript of the trial on June 20, 2012. Joel's failure to provide complete transcripts of the proceedings, failure to present comprehensible legal arguments,

and failure to cite where in the record certain errors occurred make it difficult to review the arguments on appeal.[4]

In his second point of error, Joel alleges that the District Court erred by allowing "Ronnie Adkins" to testify over the objection of the Jordans' counsel. The opening brief cites to the partial transcript of June 20, 2012 as the place in the record where the error allegedly occurred. The excerpt provided shows that Locricchio objected to the testimony of "THE WITNESS" based on relevance. However, this short excerpt fails to illuminate who "THE WITNESS" is, the testimony which was allegedly irrelevant, or the District Court's ruling on the objection. It is the appellant's duty under Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 11(a) to provide a record on appeal that is sufficient to review the points of error asserted.[5] The record is insufficient to support Joel's argument that the District Court erred. <u>See</u> <u>State v. Hoang</u>, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000).

(3) Joel's third point of error complains about Adkins's decorum in the courtroom and the District Court's alleged failure to curb his behavior. However, the opening brief fails to present any argument as to how these alleged errors bear on Joel's request that this court vacate the District Court's

---

[4] Although Joel filed an appendix to his opening brief, it does not contain any transcripts that were not already included in the JIMS record on appeal.

[5] HRAP Rule 11(a) states:

(a) **Duty of Appellant.** After the filing of the notice of appeal, the appellant, or in the event more than one appeal is taken, each appellant, shall comply with the applicable provisions of Rule 10 and shall take any other action necessary to enable the clerk of the court to assemble and transmit the record. It is the responsibility of each appellant to provide a record, as defined in Rule 10 and the Hawai'i Court Records Rules, that is sufficient to review the points asserted and to pursue appropriate proceedings in the court or agency from which the appeal is taken to correct any omission.

judgment. We deem this point of error waived. HRAP Rule 28(b)(7).[6]

(4) Joel contends that the District Court erred by not allowing a police officer to testify about a tape recording.[7] In support of this argument, the opening brief cites to the partial transcript of June 20, 2012. However, the short excerpt cited is wholly unhelpful and indeed, does not reveal the Jordans' request or the District Court's ruling denying the request. Joel has failed to provide a sufficient record under HRAP Rule 11(a) to warrant relief based on this alleged error.

Finally, although not properly raised in Joel's points of error, Joel argues that the District Court erred because: (1) Adkins's counterclaim should have been dismissed because it claimed more than $1000 for the work of an unlicensed contractor; (2) the District Court should not have allowed the trial to proceed with Adkins acting as a lawyer for third parties; and (3) "[t]he court did not give complete credence to Plaintiff's testimony imputing the fact that Plaintiff's Counsel was creating new testimony that was never introduced at trial."

Although no authority is cited on appeal, Joel appears to rely on Hawaii Revised Statutes (**HRS**) § 444-22 (2013),[8] which precludes unlicensed contractors from recovering damages in a civil action for work performed in violation of any provision of HRS Chapter 444. We note, however, that certain exemptions may

---

[6] HRAP Rule 28(b)(7) states that the appellant shall submit an opening brief containing "[t]he argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. The argument may be preceded by a concise summary. Points not argued may be deemed waived."

[7] It appears from the record that the tape recording purportedly contained a statement from Adkins's son saying that Adkins never paid him out of the money that Adkins received from the Jordans.

[8] HRS § 444-22 reads:

> The failure of any person to comply with any provision of this chapter shall prevent such person from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such person failed to obtain a license under this chapter prior to contracting for such work.

apply. Joel's reference to a $1000 limit refers to HRS § 444-2(4) (2013), which states that the provisions of HRS Chapter 444 will not apply to "[a]ny project or operation for which the aggregate contract price for labor, materials, taxes, and all other items is not more than $1,000." The District Court apparently *agreed* with Joel that HRS § 444-2(4), called the handyman exemption, did not apply. Although not explicitly stated, it appears that the District Court was of the opinion that Adkins could pursue his claim because of the "owner-builder" exemption under HRS § 444-2.5(a) (Supp. 2010).[9] Joel's brief does not make any argument as to why the owner-builder exemption did not apply. We do not discern any basis to disturb the District Court's ruling.

Joel's next assertion assumes that the District Court allowed Adkins to "act as a lawyer" for the other persons to whom the Jordans allegedly owed money. However, as discussed, the District Court only awarded Adkins the money he allegedly was

---

[9] At the time that Adkins alleged that the Jordans owed him for his services (September 23, 2010), HRS § 444-2.5(a) read as follows:

> (a) This chapter shall not apply to owners or lessees of property who build or improve residential, farm, industrial, or commercial buildings or structures on property for their own use, or for use by their grandparents, parents, siblings, or children and who do not offer the buildings or structures for sale or lease[.]

Minor changes were made in 2013 to remove industrial and commercial buildings from the purview of this exception. See HRS § 444-2.5(a) (2013).

At the end of the trial, the District Court apparently credited testimony that Joel was acting as an owner-builder in this case. Specifically, the District Court stated:

> The question as to whether a contractor's license was required or not boils down to the agreement of the parties. It just goes back right to the beginning. Mr. Jordan, his testimony is that he hired a contractor to . . . a licensed contractor - what he thought was a licensed contractor at the time. Mr. Adkins' testimony is I . . . signed on as a laborer and I thought Mr. Jordan was an owner/builder. . . .
> But some other things are also clear. Mr. Jordan did act as an owner/builder on at least two other occasions. He said he got Ronnie Adkins back to work on - on the floors afterwards. There was - no - no one ever claims that he or she thought that Ronnie Adkins was a contractor so that must have been as laborer, and it must have been labor for an owner/builder.

owed for his personal services.  The allegation that the District Court allowed him to represent others who were not joined as parties to the case is without merit.  Finally, the last allegation is incomprehensible and Joel provides no record citations which would aid this court in determining where this error allegedly occurred.

For these reasons, the District Court's December 27, 2012 Judgment is affirmed.

DATED: Honolulu, Hawai'i, July 9, 2015.

On the briefs:

Anthony P. Locriccho
for Plaintiff-Appellant

Donald Adkins
Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge